**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**LANCE A. ZEGLEN,**                    :

                    **Plaintiff**       :        **CIVIL ACTION NO. 3:CV-04-1940**

        **v.**                          :        **(MUNLEY, D.J.)**
                                                 **(MANNION, M.J.)**
**GERALD PAPPERT, et al.**              :

                    **Defendants**      :

## REPORT AND RECOMMENDATION

The plaintiff, Lance A. Zeglen, a Pennsylvania State Police Officer,

filed this civil rights action pursuant to 42 U.S.C § 1983 on August 31, 2004.

(Doc. No. 1). There are thirteen (13) defendants, identified in more detail

below, most of whom are Pennsylvania government officials and/or

employees of the Pennsylvania State Police. The complaint alleges, *inter alia*,

that the defendants have participated in a concerted effort to harass,

persecute and intimidate the plaintiff in retaliation for his having exercised his

First Amendment right to publically express his opposition to various policies

of the Pennsylvania State Police. The plaintiff also claims his Fourth

Amendment rights were violated by the defendants' actions in bringing a false

and malicious criminal prosecution against him.  The plaintiff also seeks to

bring a state tort claim of defamation and "false light misrepresentation"

against defendant Brooke Quick, a private party, pursuant to this court's

supplemental jurisdiction, 28 U.S.C. § 1367 (a).[1] The plaintiff seeks monetary damages, attorneys fees and costs. Presently before the court are the state actor defendants' motion to dismiss and defendant Pappert's motion for sanctions. (Doc. Nos. 9, 5).

## I.   **PROCEDURAL HISTORY**

The plaintiff's complaint was filed on August 31, 2004. (Doc. No. 1). Summons issued on the named defendants on September 1, 2004. Defendant Gerald Papert filed a motion for sanctions, with supporting brief, on October 19, 2004. (Doc. Nos. 5, 6).  The plaintiff filed a response to the motion for sanctions on October 21, 2004. (Doc. No. 7).  Defendant Pappert filed a reply to the plaintiff's response on October 22, 2004. (Doc. No. 8).  On November 1, 2004, defendants Pappert, Brown, Carusone, Duby, Evanko, Miller, Patrick, Rain, Saites, Sharif, Titler and Transue ("state actor defendants") filed a motion to dismiss. (Doc. No. 9).  A brief in support of the motion to dismiss was filed on November 15, 2004. (Doc. No. 10).  After being granted an extension of time in which to do so, the plaintiff filed a brief in opposition to the motion for sanctions on December 7, 2004. (Doc. No. 13).

---

[1]The plaintiff's state law claim is pendant to the § 1983 claims and is properly before the court pursuant to the exercise of supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction if they form part of the same case or controversy. 28 U.S.C. § 1367(a).

On the same date, the plaintiff filed a reply brief to the motion to dismiss. (Doc. No. 15).  On December 8, 2004, the plaintiff filed exhibits in support of the brief in opposition to the motion to dismiss. (Doc. No. 15).

The defendants are Gerald Pappert, Pennsylvania Attorney General; Jeffrey Miller, Pennsylvania State Police ("PSP"); Paul Evanko, former PSP Commissioner; John Duby, Barry Titler, Rick Brown, Christopher Saites, Farzad Sharif, Michael Patrick, and Garrett Rain are PSP officers. Christopher Carusone was an attorney with the PSP at the time of the complained of actions.

Brooke Quick is a private party. Defendant Quick has not joined in the motion to dismiss. She was personally served with the complaint on February 3, 2005, by Constable Frank L. Miller.  She filed a waiver of service of summons on February 27, 2005, but has not otherwise responded to the complaint.


## II.    **STANDARD OF REVIEW**

Presently before the court are the state actors motion to dismiss and defendant Pappert's motion for sanctions.

### A.    Motion to Dismiss

Defendants' motion to dismiss is brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6).  This rule provides for the dismissal of a complaint, in whole or in part, if the parties fail to state a claim upon which relief can

granted.   Dismissal should occur only where it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Accordingly, dismissal is appropriate "only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint."   Trump Hotel and Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998)(citing ALA, Inc. v. CCair, Inc., 29 F.3d 855, 859 (3d Cir. 1994)).   A dismissal under Rule12(b)(6) should only be granted if "it is certain that no relief can be granted under any set of circumstances which could be proved."   Steamfitters Local Union No. 420 Welfare Fund v. Phillip Morris, Inc., 171 F.3d 912, 919 (3d Cir. 1999)(citing City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 262 n. 12 (3d Cir. 1998)).

In deciding a motion to dismiss, a court should generally consider only the allegations contained in the complaint, the exhibits attached to the complaint, matters of public record, and "undisputably authentic" documents which plaintiff has identified as the basis of his claim. Pension Benefit Guarantee Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).   It must also be remembered that when considering a motion to dismiss under Rule 12(b)(6), the important inquiry is not whether the plaintiff will ultimately prevail on the merits of his claims, but only whether he

4

is entitled to offer evidence in support of them.  Scheuer v. Rhodes, 416 U.S. 233, 236 (1974).

With the above principles in mind, the court will address the allegations in the complaint, the arguments presented by the defendants in support of the motion to dismiss.

The plaintiff alleges in his complaint that the state actor defendants acted in concert to harass, persecute and intimidate him in retaliation for his having made public statements which criticized Pennsylvania State Police policies and procedures.  Specifically, he claims that the defendants have perpetrated against him, among other things, adverse employment actions, selective investigations, unlawful searches of his home and personal property, and a false and malicious criminal prosecution.

The following are the specific allegations in the complaint.  The plaintiff alleges that in 1996, the plaintiff became aware of defendant Evanko's intention to disband PSP Interstate Troop S.  Plaintiff was active in letter writing and lobbying efforts to change PSP policies.  He claims that although he was a "prolific" advocate for PSP change, at no time did he ever violate a single PSP regulation, custom, practice or usage. (Doc. No. 1, ¶ 13).

The plaintiff allegedly spoke out openly to other PSP troopers to suggest that since it was in a trooper's "discretion" as to whether to issue traffic tickets or merely warnings, each trooper should be guided by his own discretion in this regard.  The plaintiff alleges that shortly after he made such statements,

5

"[a]cross the state PSP troopers, sua sponte, began writing warnings and not tickets in significant numbers." (Doc. No. 1, ¶ 18).  The plaintiff believes that as a result of this development, PSP officials and employees began a systematic effort to retaliate against, and to punish him. The plaintiff claims that defendant Evanko personally initiated an Internal Affairs investigation against him, which continued for nearly three years, and  produced "exactly nothing" against the plaintiff. (Doc. No. 1, ¶ 23).

Starting sometime in mid 2000, the plaintiff learned that he was the "target of retaliation" and that "Evanko, and the Department were out to get him." (Doc. No. 1, ¶ 24).  In 2001, the plaintiff was accused of kissing and giving beer to a fifteen year old girl. An investigation by the PSP Internal Affairs Division ("IAD") ensued, which allegedly also produced nothing. (Doc. No. 1, ¶ 25).

The plaintiff claims that "IAD scoured the local-area for anything they could use" against him.  IAD "finally came up with" defendant Brooke Quick, who alleged that she had had a romantic liaison with the plaintiff when she was 16 years old. [2] This accusation led to further investigation, which included searches of the plaintiff's house, car, boat , computer, and his locker at work. The plaintiff claims that his telephone was wiretapped.

---

[2]There is no information in the complaint as to the age of defendant Quick when she made these allegations.

6

The plaintiff maintains that the defendants Pappert, Evanko, Miller and Transue attempted to persuade Pike County District Attorney Douglas Jacobs to press charges against him but that he refused.  He further alleges that Chief Deputy Attorney General Robert O'Hara, whose office is in Scranton, Pennsylvania, was approached but declined to prosecute.  The plaintiff states that at this point defendant Pappert directed O'Hara to file charges against the plaintiff, but that O'Hara once again declined to do so. (Doc. No. 1, ¶¶ 29-34). The plaintiff maintains that defendant Carusone, acting in his capacity as attorney for the PSP "continued to advise PSP officials to push the case." (Doc. No. 1, ¶ 34).

The plaintiff claims that due to extreme stress caused by the actions of the defendants, on May 9, 2001, he sought counseling with his PSP peer contact, Bill Satkowski.  The plaintiff was suspended the next day. The plaintiff believes that his suspension was part of the ongoing endeavors on the part of the defendants to punish him for speaking out publically against PSP policies. (Doc. No. 1, ¶¶ 36-37).   In addition, the plaintiff claims that defendants Miller, Titler, Sharif, Duby, Rain and Saites all worked together to file false reports against the plaintiff and to cause criminal charges against him related to his alleged improper relationship with defendant Quick ("Quick prosecution").  The plaintiff states that he was found not guilty of the charges in a court of law in January 2004. (Doc. No. 1, ¶ 41). He states further that it was not until the "Summer and Fall of 2003" that he discovered that the

defendants caused the Quick prosecution to go forward despite O'Hara's having twice told investigators that the case had no merit and he would not bring charges against the plaintiff.

The plaintiff summarizes his claims against the state actor defendants as follows:

> ...[D]efendants Pappert, Miller, Evanko, Transue, Carusone, and Brown have unlawfully worked together to retaliate against plaintiff by bringing false and malicious charges and conducting baseless unfounded harassing and intimidating searches and investigations into the plaintiff's affairs and by assessing unfounded and unjustified punishments and disciplines against plaintiff because he spoke out on matters of public concern in the past...

> ...[All of the defendants] participated in efforts as specified in the complaint above to falsely investigate and bring charges against plaintiff which were unsupported and which were designed to retaliate against the plaintiff for speaking out on matters of public concern in violation of his Fourth Amendment right to be free of malicious prosecutions and unlawful searches and seizures...

(Doc. No. 1, ¶¶ 46, 48).

The defendants argue that the complaint should be dismissed for four reasons: (1) the retaliation claim is time-barred; (2) the plaintiff cannot state a retaliation claim because the allegedly protected conduct is temporally too remote from the claimed retaliatory acts to meet the causation prong of a retaliation claim; (3) the plaintiff has not alleged a Fourth Amendment malicious prosecution cause of action because he has not asserted a deprivation of liberty consistent with the concept of seizure, and (4) defendant

8

Pappert is entitled to absolute immunity.

The plaintiff has brought this civil rights action pursuant to 42 U.S.C. § 1983.  Section 1983 is not a source of substantive rights, but provides a remedy against state officials for violations of constitutional rights. City of Oklahoma v. Tuttle, 471 U.S. 808, 816 (1985); 42 U.S.C. § 1983.  The initial inquiry is (1) whether the conduct complained of was committed by a person acting under color of state law, and (2) whether the conduct deprived the plaintiff of rights secured by the United States Constitution or other federal laws. West v. Atkins, 487 U.S. 42, 48 (1988); Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995).

In actions brought pursuant to section 1983, the federal courts apply the state's statute of limitations for personal injury claims.  See Wilson v. Garcia, 471 U.S. 261, 276-78; 287 Corporate Ctr. Assocs. v. Township of Bridgewater, 101 F.3d 320, 323 (3d Cir. 1996).  Pennsylvania's person injury statute of limitations is two years.  42 Pa. Cons. Stat. Ann. § 5524.  A section 1983 claim accrues when the plaintiff knew, or should have known, of the injury upon which the claim is premised.  See de Botton v. Maple Twp., 689 F. Supp. 477, 480 (E.D. Pa. 1988). The defendants maintain that "much of" the alleged retaliatory conduct occurred well beyond the two year statute of limitations. (Doc. No. 10, p. 7).

The plaintiff proposes that the "continuing violation" doctrine applies in his case, thus tolling the statute of limitations as it pertains to certain

9

retaliatory acts which occurred prior to the date when the limitations period would have begun, two years before September 1, 2004, the date that the complaint was filed.

The continuing violations doctrine is an exception to the statute of limitations requirement.  Under the doctrine, a federal cause of action, based upon a defendant's continuing conduct, is timely provided that the last act of that continuing conduct occurred within the period for the commencement of an action specified by the applicable statute of limitations. 287 Corporate Ctr. Assocs., 101 F.3d at 324 (citing Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991).  In order to determine whether the continuing violations doctrine applies, the court should consider at least three factors:

> (1) subject matter--whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation;
>
> (2) frequency--whether the acts are recurring or more in the nature of isolated incidents; and
>
> (3) degree of permanency--whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

Cowell v. Palmer, 263 F.3d 286, 292 (3d Cir.2001). A plaintiff asserting the continuing violations doctrine must demonstrate that the defendants' conduct is "more than the occurrence of isolated or sporadic acts." West v.

Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir.1995). The key consideration is the degree of permanency. Nicolette v. Caruso, 315 F.Supp.2d 710 (W.D. Pa. 2003)(citing Berry v. Board of Supervisors of Louisiana State University, 715 F.2d 971, 981 (5th Cir.1983).

In this case, plaintiff pled facts sufficient to invoke the continuing violations theory regarding defendants' alleged retaliatory actions. He has alleged that he did not know the full extent of the behind-the-scenes manipulative conduct of the defendants in bringing the Quick prosecution until "the Summer and Fall of 2003." (Doc. No. 1, ¶ 42).   In addition, the subject matter of the alleged infractions–retaliatory acts in violation of plaintiff's First and Fourth Amendment rights--is identical. Plaintiff alleged in his complaint, and supplemental replies, an ongoing course of conduct undertaken by defendants which was intended to harass, intimidate and punish him, because he has been an outspoken critic of PSP policies. Plaintiff's complaint, thus, sufficiently states a claim that the alleged retaliatory acts were ongoing throughout the period in question.   In fact, the plaintiff claims that the violations, including adverse employment actions taken against him, continued up to and including the date that he filed the complaint. Therefore, for purposes of this motion to dismiss, accepting the plaintiff's factual averments as true and making all inferences favorable to the plaintiff, as this court is required to do, the plaintiff has alleged sufficient facts regarding entitlement to the continuing violations theory to survive the defendants'

11

motion to dismiss.   This finding does not prejudice the   rights of the defendants in a motion for summary judgment to present evidence that the plaintiff cannot, as a matter of law, show entitlement to the continuing violations theory of equitable tolling.

The defendants next argue that the complaint should be dismissed because the plaintiff cannot state a First Amendment retaliation claim because the allegedly protected conduct is temporally too remote from the alleged retaliatory acts to satisfy the causation element of the cause of action.

To prevail on a First Amendment retaliation claim a section 1983 plaintiff must prove that (1) he engaged in protected activity; (2) the government responded with retaliation, and (3) the protected activity was the cause of the government's retaliation.  Once the plaintiff has set forth a *prima facie* case, the burden shifts to the government to show that it would have taken the same action regarding the plaintiff whether or not he had engaged in protected activity. Anderson v. Davila, 125 F.3d 148 (3d Cir. 1997)(citing Mt. Healthy City School Dist. Bd. of Ed. v. Doyle, 429 U.S. 274 (1977).

In order to qualify speech as a protected activity under the First Amendment, a plaintiff must ordinarily show that the speech was a matter of public concern. Grimm v. Borough of Norristown, 226 F. Supp.2d 606 (E.D. Pa. 2002).  Public employees have a right to speak out on matters of public concern without fear of retaliation. *See* Ober v. Evanko, 80 Fed. Appx. 96 (3d

Cir. 2003). The plaintiff has alleged that the protected activity he engaged in which set in motion the continuing retaliation was that he spoke out against defendant Evanko's decision to eliminate PSP Interstate Troop S in 1996. (Doc. No. 1, ¶¶ 12,13).  He describes himself as "probably the most prolific, if not the most active PSP member in his efforts to contact and educate elected officials about Commissioner Evanko's plans." (Doc. No. 1, ¶ 13).

Once a plaintiff demonstrates that the engaged in activity was protected, the remaining elements of the cause of action require that he also demonstrate that the defendants' conduct was taken in retaliation for the plaintiff's exercise of his First Amendment rights.  Initially, the plaintiff must establish that the protected conduct was a "substantial" or "motivating" factor in the defendants' actions. Mt Healthy, 429 U.S. at 287.

The defendants argue that the retaliation claim should be dismissed because the plaintiff cannot sustain his burden of proof on the causation element.  This is so, defendants maintain, because the temporal proximity between the protected conduct and any alleged retaliatory acts is too attenuated to satisfy the element of causation.  The defendants state that the alleged protected speech occurred in 1996, that defendant Evanko's initial internal affairs investigation of the plaintiff occurred "before the turn of the century", and that any claim of malicious prosecution involving defendant Quick is "too remote in time to rescue the First Amendment claim." (Doc. No. 10, pp. 8-9).

13

As noted above, when considering a 12(b)(6) motion to dismiss, the question the court considers is not whether the plaintiff can prevail on the merits of his claims; it is solely whether the plaintiff has set forth allegations sufficient to show that he is entitled to present evidence in support of his claims. Scheuer, 416 U.S. at 236.  In this case the plaintiff has set forth a long series of allegedly retaliatory actions taken by the defendants against him, and readily admits that the conduct which set the continuing violations in motion was the protected conduct revolving around the decision to disband Interstate Troop S in 1996.  Temporal proximity between the protected conduct and the allegedly retaliatory acts has probative value, but other evidence that may suggest a causal connection between the protected activity and the allegedly retaliatory acts should also be considered. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279-80 (3d Cir. 2000); Grimm, 227 F.Supp.2d at 643.  At this stage of the proceedings this court cannot conclude as a matter of law that the plaintiff can put forth no set of facts which could establish a causal connection between the 1996 protected speech and the series of allegedly retaliatory acts the defendants.  As a result, the motion to dismiss should not be granted as it pertains to the First Amendment retaliation claim.

The defendants next argue that the Fourth Amendment malicious prosecution claim should be dismissed because the plaintiff has not pled a deprivation of liberty consistent with the concept of a seizure. A plaintiff

14

asserting a malicious prosecution claim must show "some deprivation of liberty consistent with the concept of seizure." Gallo v. City of Philadelphia, 161 F.3d 217 (3d Cir. 1998)(citing Singer v. Fulton County Sheriff, 63 F.3d 110(2d Cir. 1995); Bristow v. Clevenger, 80 F.Supp.2d 421 (M.D. Pa. 2000). The defendants maintain that dismissal of the Fourth Amendment malicious prosecution claim is warranted because, "at no point in the complaint does Zeglen address any liberty interest of which he was deprived as a result of the criminal charges. This is fatal to his complaint." (Doc. No. 10, pp. 11-12).

The plaintiff does, in fact, allege that the Quick prosecution implicated his constitutionally protected liberty interests. He states:

> ...Quick's solicited accusations were not true, but regardless, on June 13, 2000 plaintiff was restricted to Barrack's duty and was ordered not to gather witnesses, or appear at, or near a local mall. Later that month a search warrant was issued and executed for plaintiff's house, his two cars, his boat, and his locker at work, looking for evidence of a relationship between Brooke Quick and plaintiff with no results. The defendants even took plaintiff's computer and examined the hard drive and also conducted DNA and hair sample tests in a prodigious effort to find some way to implicate the plaintiff in a crime. This dedicated effort by the defendants also included wiretapping plaintiff's telephone...

> ...After [the plaintiff] was found not guilty in a court of law in January 2004, where he was prosecuted only after Pappert, at Miller's request, ordered [Chief Deputy Attorney General O'Hara] to prosecute the plaintiff despite [O'Hara's] twice declining [to do so], the pretrial defendants had placed him under were not only continued in violation of his rights, on February 9, 2004, the defendant Transue, by and through defendant Titler, on behalf of defendant Miller, increased the restrictions on speech, association, and travel under which plaintiff had suffered, making

15

it almost impossible for him to move in and about his community and home.  Transue thus further retaliated against plaintiff to please defendant Miller...

...Plaintiff did not learn of the earlier misconduct of the defendants which are complained of herein until the Summer and Fall of 2003.  It was at that time that plaintiff learned that the defendant Pappert had personally ordered [O'Hara] to prosecute plaintiff even though the defendants knew Brooke Quick had lied to the police and that prior to plaintiff's primary hearing, in August 2002, that PSP investigators had even instructed witnesses not to appear for plaintiff...

...[T]he defendants Pappert, Miller, Evanko, Transue, Carusone, and Brown have unlawfully worked togther to retaliate against plaintiff by bringing false and malicious charges and conducting baseless unfounded harassing and intimidating searches and investigations into the plaintiff's affairs and by assessing unfounded and unjustified punishments and disciplines against plaintiff because he spoke out on matters of public concern in the past.

(Doc. No. 1, ¶¶ 28, 42, 46).

In Gallo, *supra*, the court addressed the question of what may constitute

a seizure within a Fourth Amendment claim of malicious prosecution.  There

the court stated:

Because under the common law, the tort of malicious prosecution concerns "perversion of proper legal procedures," Gallo must show that he suffered a seizure as a consequence of a legal proceeding...In this case, the legal proceeding was the indictment , and Gallo's post-indictment liberty was restricted in the following ways: he had to post a $10,000 bond, he had to attend all court hearings including his trial and arraignment, he was required  to contact Pretrial Services on a weekly basis, and he was prohibited from traveling outside New Jersey and Pennsylvania. Although it is a close question, we agree with Gallo that these restrictions amounted to a seizure.

Gallo, 161 F.3d at 222.

Applying this reasoning, this court cannot say, at this stage of the proceedings, that the plaintiff cannot, as a matter of law, set forth facts which can establish that the Quick prosecution implicated the plaintiff's Fourth Amendment rights.  As a result, the Fourth Amendment malicious prosecution claim should not be dismissed.

The complaint also appears to allege a state tort for malicious prosecution.  Assuming that it does,  the defendants also argue that the claim should be dismissed because the plaintiff has not alleged that probable cause did not exist to bring the Quick prosecution.

In Pennsylvania, a party bringing a malicious prosecution claim must demonstrate that (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause, and (4) the defendants acted maliciously or for a purpose other than bringing the person to justice.  Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996)(citing Haefner v. Burkey, 534 Pa. 62 (1993).

It is evident that the gravamen of the malicious prosecution claim includes an averment that Quick's allegations were so patently false, that any reasonable prosecutor would have recognized it immediately.  The plaintiff infers as much in his repeated statements that Chief Deputy O'Hara twice refused to bring charges regarding Quick's allegations, and was eventually

directed to do so by defendants Pappert, Evanko, Miller, Transue and Carusone. Thus, the plaintiff has, in fact, alleged that the prosecution was initiated without legitimate probable cause.

Furthermore, although whether probable cause existed is a question of law for the court, and not for the jury, when the determination of probable cause depends on disputed issues of fact, the court should submit the factual disputes to a jury, and then make the probable cause determination based upon the jury's findings. *See*, Gilbert v. Feld, 842 F.Supp. 803, 815 (E.D.Pa. 1993)(citing Simpson v. Montgomery Ward & Co., 354 Pa. 87 (1946); Thomas v. E.J. Corvette, Inc. 476 F.2d 471, 475 (3d Cir. 1974). In Bristow, *supra*, the court stated:

> The test for probable cause has both a subjective component and an objective component.  The subjective component requires that the defendant "honestly believe" that the accused committed the crime for which [he] was prosecuted, while the objective component requires that his belief be based upon a reasonable ground of suspicion of guilt."

Bristow, 80 F. Supp.2d at 434 (citing Neczypor v. Jabobs, 403 Pa. 303)(emphasis in the original); *accord* Gilbert, 842 F. Supp. at 815.

Applying the reasoning of these cases, at this stage of the proceedings, the court cannot say as a matter of law that the plaintiff cannot set forth facts which may establish that the Quick prosecution was *not* brought based on a "reasonable ground" of suspicion of guilt.  As a result, the state tort claim of malicious prosecution should not be dismissed.

18

Finally, the defendants assert that any claims stated against defendant Attorney General Pappert must be dismissed because he is entitled to absolute immunity.  For the reasons set forth below, the court concludes that under the facts as alleged by the plaintiff, defendant  Pappert is not entitled to the presumption of absolute immunity at this stage of the proceedings.

B.    The Motion for Sanctions

Defendant Pappert argues in his motion for sanctions that as Attorney General for the Commonwealth of Pennsylvania he is entitled to absolute immunity. The motion is filed pursuant to Fed.R.Civ.P. 11. Defendant Pappert maintains that once counsel for Pappert advised plaintiff's counsel that Pappert was entitled to absolute immunity, counsel/plaintiff "should have promptly dismissed Pappert from his lawsuit.  A failure to do so is inexcusable and should be sanctioned." (Doc. No. 6, p.5). Defendant Pappert offers no authority or case law in support of this proposition.

Rule 11 provides in pertinent part:

(b) ... By presenting to the court ... a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--(1) [the pleading, written motion, or other paper] is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for

further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
(c) ... If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

Fed.R.Civ.P. 11(b) and (c).

Bad Faith is not required to impose Rule 11 sanctions. <u>Martin v. Brown</u>, 63 F.3d 1252, 1264 (3d Cir. 1985). Our Third Circuit Court of Appeals has held that the correct Rule 11 inquiry is "whether, at the time he filed the complaint, counsel...could have reasonably argued in support of his legal theory." <u>Mary Ann Pensiero, Inc. v. Lingle</u>, 847 F.2d 90, 93 (3d Cir. 1988). An attorney's conduct should be tested under a standard of what was "objectively reasonable under the circumstances." <u>Simmerman v. Corino</u>, 27 F.3d 58, 62 (3d Cir.1994). To comply with this standard, counsel "must conduct a reasonable investigation of the facts and a normally competent level of legal research to support the presentation." <u>Id</u>.

In opposition to the motion for sanctions the plaintiff argues that under the facts he has alleged defendant Pappert is not entitled to absolute immunity. He notes that while it is true that prosecutorial immunity from civil suit for damages under § 1983 is normally extended to all activities "intimately associated with the judicial phase of the criminal process," <u>Imbler v. Pachtman</u>, 424 U.S. 409, 431 (1976), immunity does not extend to

20

administrative decisions, including those regarding the employment or supervision of personnel outside the prosecutor's office. Carter v. City of Philadelphia, 131 F.3d 339 (3d Cir. 1999).   The complaint alleges that defendant Pappert acted behind the scenes to influence the PSP administration to take adverse personnel actions against the plaintiff in retaliation for speaking out against PSP public policy decisions.  Furthermore, the right to hold specific employment and to follow a chosen profession free from unreasonable government interference may, under certain circumstances, implicate both a "liberty" and a "property" interest. Piecknick v. Commonwealth of Pennsylvania, 36 F.3d 1250, 1259 (3d Cir. 1994). Finally, the United States Supreme Court has directed that courts take a "functional" approach to immunity issues, which requires that the official seeking absolute immunity bear the burden of showing that immunity is justified for the function in question. *See* Buckley v. Fitzsimmons, 509 U.S. 259 (1993); Giuffre v. Bissell, 31 F.3d 1241 (3d Cir. 1994).  In this case the plaintiff  has alleged that defendant Pappert acted entirely out of the scope of his prosecutorial discretion in influencing PSP administration to take retaliatory action against the plaintiff by leveling employment sanctions against him. It cannot be  concluded, at this stage of the proceedings, that the plaintiff's counsel could not have reasonably argued in support of his legal theories, including the theory that defendant Pappert is not entitled to absolute immunity based on the unlawful conduct as alleged in the complaint.  As a

result, at this stage of the proceedings, the motion for sanction should be denied.

For the same reasons, the motion to dismiss as it pertains to defendant Pappert's claim to absolute immunity, should also be denied. In Carter, *supra*, the court stated that dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is improper where the plaintiff's claim is not related to conduct on the part of the prosecutor which occurred in the course of "initiating and pursuing a criminal prosecution," but rather is premised upon some other act which does not fall within the purview of absolute immunity.  A prosecutor acting in an investigative or administrative capacity is protected only by qualified immunity. Giuffre, 31 F.3d at 1251. This court cannot conclude as a matter of law that the plaintiff cannot set forth facts to establish that defendant Pappert may not be entitled to absolute immunity for certain of the retaliatory acts of which he is accused. As a result, the motion to dismiss as it pertains to the claim of absolute immunity should be denied.[3]

---

[3]The court would be remiss not to note that even though it has viewed all of the allegations in the complaint as true, plaintiff's claim that absolute immunity is inapplicable is supported by the slimmest allegations conceivable. The plaintiff would be well advised to carefully evaluate the information disclosed during discovery as to whether the Attorney General's involvement was part and parcel of his prosecutorial function. The fact that Rule 11 sanctions are not imposed at this stage does not foreclose the later imposition of sanction at the summary judgment stage.

## III.    RECOMMENDATION

Based on the foregoing, **IT IS RECOMMENDED** that:

(1) the motion to dismiss filed by defendants Pappert, Evanko, Miller, Transue, Duby, Sharif, Titler, Carusone, Saites, Brown, Patrick and Rain (Doc. No. 9) should be denied; and,

(2) defendant Pappert's motion for sanctions (Doc. No. 5) should be denied.


s/ Malachy E. Mannion
**MALACHY E. MANNION**
**United States Magistrate Judge**


Dated:   July 28, 2005

O:\shared\REPORTS\2004 Reports\04-1940.wpd