## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LANCE A. ZEGLEN,** | : | **No. 3:04cv1940** |
| **Plaintiff,** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **GERALD PAPPERT, PAUL** | : | |
| **EVANKO, JEFFREY MILLER,** | : | |
| **CYNTHIA TRANSUE, JOHN DUBY,** | : | |
| **FARZAD SHARIF, BARRY TITLER,** | : | |
| **CHRISTOPHER CARUSONE,** | : | |
| **CHRISTOPHER SAITES, RICK** | : | |
| **BROWN, MICHAEL PATRICK,** | : | |
| **GARRETT RAIN, and BROOKE** | : | |
| **QUICK,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Presently before the Court are Defendants' joint objections to Magistrate Judge

Malachy E. Mannion's Report and Recommendation, which suggests that we deny their

Federal Rule of Civil Procedure 12(b)(6) motion to dismiss.  Defendants' objections have

been fully briefed and are ripe for disposition. For the following reasons we will grant the

objections.

### I.      Background[1]

Plaintiff Lance Zenglen is a Pennsylvania State Police ("PSP") Trooper.  Defendant

Gerald Pappert was a Deputy Attorney General for the Commonwealth of Pennsylvania at the

time relevant to the Complaint.  Defendant Paul Evanko is the former Commissioner of the

---

[1] The following background facts are derived from the Complaint.

PSP, and Jeffrey Miller is the present commissioner.  Defendant Cynthia Transue is the

Deputy Commissioner of Administration for the PSP.  Defendants John Duby, Farzad Sharif,

Barry Titler, Rick Brown, Nicolas Saites, Michael Patrick, and Garrett Rain are PSP officers.

Defendant Christopher Carusone was an attorney for the PSP.  Defendant Brooke Quick was a

witness in a PSP investigation into Zenglen's activities.

In 1996, Zenglen publicly lobbied against the PSP's plan to disband Interstate Troop S.

He also instructed his fellow troopers to distribute tickets in a manner that infuriated

Commissioner Evanko.  In retaliation, Defendant Evanko filed an Internal Affairs Division

("IAD") complaint against Zenglen.  This investigation lasted two years.  In the summer of

2000, Zenglen learned that Evanko intended to retaliate against him and that he and the entire

Department "were out to get him."  (Compl. ¶ 24).

Also in the summer of 2000, another internal investigation revealed that a young woman

named Brooke Quick claimed she had an affair with Zenglen when she was only sixteen.  Even

though the accusations were untrue, on June 13, 2000 the PSP restricted Zenglen to barracks

duty, ordered him not to gather witnesses, and instructed him not to appear at, or near, a local

mall.  During an investigation into Quick's accusations, some of the defendants obtained a

search warrant, searched Zenglen's home, cars, boat, work locker, and computer.  They also

conducted DNA tests and wiretapped his phone.

The next incident began in January 2001, when Robert Morgan accused Zenglen of

kissing his fifteen year-old stepdaughter and giving her beer.  After an initial investigation

established the accusations were meritless, PSP "higher-ups" ordered a reinvestigation.

2

On May 9, 2001, Plaintiff was suspended after he sought help from his PSP peer counselor.  In August 2001, Lt. Gilbert of the PSP told Zenglen that the IAD's reinvestigation was retaliatory.  That same month, the PSP sought approval to proceed with charges from Pike County District Attorney Douglas Jacobs.  He declined to prosecute and referred the matter to the Pennsylvania Attorney General's office.

Tom O'Hara of the Attorney General's office declined to prosecute the case in November 2001, but Defendant Jeffrey Miller continued to investigate Zenglen's activities. At some point thereafter, Defendant Pappert ordered O'Hara to prosecute the case, and O'Hara complied.  In January 2004, Zenglen was acquitted.  Thereafter, Defendants Transue and Titler increased the restrictions on Zenglen's travel and speech.

## II.     Standard

When a 12(b)(6) motion is filed, the sufficiency of a complaint's allegations are tested. The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted.  In deciding a 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  "A court should not dismiss a complaint under Rule 12(b)(6) for failure to state a claim for relief 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief.'"  Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 559 (3d Cir. 2002) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

3

### III.     Discussion

On August 31, 2004, Plaintiff filed a Complaint advancing three counts.  Count I is a section 42 U.S.C. § 1983 claim alleging that Defendants Miller, Evanko, Transue, Carusone, and Brown conspired to retaliate against him for protected speech in violation of the First Amendment.  Count II advances a section § 1983 malicious prosecution claim against every defendant.  Count III presents pendent state law defamation and false light claims against Defendant Brooke Quick.

Defendants[2] filed a joint motion to dismiss Counts I and II pursuant to Federal Rule of Civil Procedure 12(b)(6).[3]  Regarding Count I, they argued that many of the retaliatory actions were time barred and those actions that were not time barred are too temporally remote from the protected speech to constitute retaliation.  They argued that Count II should be dismissed because the Complaint does not assert that Zenglen suffered a deprivation of liberty necessary to give rise to a malicious prosecution claim.  Finally, they argued that Defendant Pappert is entitled to prosecutorial immunity.

Magistrate Mannion issued a Report and Recommendation proposing that we deny Defendants' motion to dismiss in its entirety.  Defendants now object to the Magistrate's

---

[2] Every defendant except Brooke Quick joined in the motion to dismiss.  She has not filed a motion.

[3] Defendants also filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 11. Defendants do not object to the Magistrate's disposition of this issue, and therefore we affirm because we find no clear error or manifest injustice.

4

analysis with regard to Count I and Defendant Pappert's prosecutorial immunity.[4]  Thus, we

have three issues before us: 1) whether Pappert is entitled to prosecutorial immunity; 2)

whether some of the alleged retaliatory actions are barred by the statute of limitations; and 3)

whether the actionable retaliatory incidents are too temporally remote from the alleged

protected speech to state a cause of action.  We will address these issues *in seriatim*

### A.        Prosecutorial Immunity

Attorney General Pappert argues that the Magistrate erred in denying his motion to

dismiss based on prosecutorial immunity.  The sole factual allegation against Pappert in the

Complaint is that he ordered Assistant Attorney General Tom O'Hara to initiate charges against

Zenglen.  The Magistrate interpreted the Complaint to additionally allege that Attorney General

Pappert "acted behind the scenes to influence the PSP administration to take adverse personnel

actions against the Plaintiff" and "acted entirely outside the scope of his prosecutorial

discretion in influencing PSP administration to take retaliatory action against the plaintiff by

leveling employment sanctions against him."  (Report & Recommendation 21).  Considering

the plaintiff's briefs and the Complaint on the whole, the Magistrate misinterpreted the

allegations against Attorney General Pappert.

The Complaint presents one factual allegation regarding Pappert, and repeats it three

times.  "[T]he PSP went to Michael Fisher and Gerald Pappert in the Attorney General's office

---

[4]  Defendants do not object to the Magistrate's analysis regarding whether the Complaint
sufficiently alleges a deprivation of liberty to sustain Count II.  As no objections have been filed, we affirm
because we find no clear error or manifest injustice

to encourage the Attorney General to prosecute the case. . . . Later, Pappert ordered O'Hara to prosecute the case." (Compl. ¶ 32-33).   Later, it again focuses on the decision to prosecute. "After Zenglen was found not guilty in a court of law in January 2004, where he was prosecuted only after Pappert, at Miller's request, ordered O'Hara to prosecute the plaintiff." (Compl. ¶ 41).   The complaint repeats this factual allegation a third time.   "It was at that time that the plaintiff learned that the defendant Pappert had personally ordered O'Hara to prosecute plaintiff." (Compl. ¶ 42).   These are the sole factual allegations against Pappert, and each one references the same decision to order O'Hara to prosecute.   Based on this one incident, Zenglen advances a retaliation and a malicious prosecution claim against Pappert.   First, the retaliation claim states:

> The defendants Pappert, Miller, Evanko, Transue, Carusone, and Brown have unlawfully worked together to retaliate against plaintiff by bringing false and malicious charges and conducting baseless unfounded harassing and intimidating searches and investigations into the plaintiff's affairs and by assessing unfounded and unjustified punishments and disciplines against plaintiff because he spoke out on matters of public concern in the past.

(Compl. ¶ 46).

The malicious prosecution count alleges "the defendants above named all participated in efforts as specified in the complaint above to falsely investigate and bring charges against plaintiff which were unsupported and unsupportable and which were designed to retaliate against the plaintiff." (Compl.¶ 48).

We do not read Counts I and II to allege that Pappert committed any action other than ordering O'Hara to prosecute.   Pappert is not identified as participating in any employment discipline, or any investigation into Zenglen.   He is referenced only three times, each with

regard to the order.  Furthermore, in his brief in opposition to the defendants' objections,

Zenglen succinctly clarified his claims against Pappert.  In opposing absolute immunity, he

said, "The issue is that Pappert ordered a subordinate to initiate a prosecution, *i.e.*, he was

involved with working 'behind the scenes' to persecute Zenglen in cooperation with the PSP

defendants."[5]  (Pl. Br. in Opp. to Def. Obj. 4).  Thus, we do not read the Complaint to allege

that Pappert retaliated against O'Hara or worked in conjunction with the other defendants in

any way other than by ordering O'Hara to initiate prosecution.

We find that Pappert is entitled to qualified immunity for this act.  A prosecutor has

absolute immunity for all actions performed in a quasi-judicial role, including the decision to

prosecute.  Kulwicki v. Dawson, 969 F.2d 1454, 1463-64 (3d Cir. 1992).  The prosecutor's

motive for filing a charge, even if malicious, is irrelevant to the absolute immunity analysis.

Id.  A prosecutor does not, however, have absolute immunity for actions taken in an

administrative capacity.  Carter v. Philadelphia, 181 F.3d 339, 356 (3d Cir. 1999).

Prosecutors have only qualified immunity for administrative actions.  Id.

Zenglen argues that absolute immunity does not protect Pappert's order because this

was an administrative, rather than prosecutorial, action.  He argues that had Pappert decided to

prosecute the case himself, he would be absolutely immune, but the act of ordering a

subordinate is administrative.  Zenglen mischaracterizes his own complaint.  On the one hand,

───────────────

[5] "As a general rule, the court may only consider the pleading which is attacked by an FRCP 12(b)(6) motion in determining its sufficiency. . . .  However, the court may consider documents which are attached to or submitted with the complaint, as well as legal arguments presented in memorandums or briefs and arguments of counsel."  Pryor v. National Collegiate Athletic Ass'n,  288 F.3d 548, 560 (3d Cir. 2002) (citations omitted).

he seeks to base liability on Pappert's retaliatory decision to prosecute, but on the other he seeks to circumvent prosecutorial immunity by arguing that his complaint seeks liability based on the administrative assignment of the case to O'Hara.  We find this argument specious.  The Complaint does not allege that the act of assigning the case harmed him.  Indeed, had Pappert assigned the case to O'Hara with instructions not to prosecute, Zenglen would certainly have no malicious prosecution or retaliation claim against him.  Rather, Zenglen seeks damages for Pappert's decision to prosecute through O'Hara, and it is this decision that absolute immunity protects.

In Kulwicki, prosecutor John Dawson sought immunity for a malicious prosecution claim even though he did not file the charges himself, but rather ordered his subordinate Jack Loutzenhiser to do so.  Kulwicki, 969 F.2d at 1459.  In granting absolute immunity, the court explained, "Dawson was performing a core prosecutorial function in causing Loutzenhiser to file criminal charges against Kulwicki."  Id. at 1464.  Furthermore, the decision to order a subordinate to prosecute is easily distinguishable from administrative acts.  For example, in Carter, the plaintiff's claim against Philadelphia District Attorney was "premised on their failure as administrators to establish training, supervision and discipline policies."  Carter, 181 F.3d at 343.  Thus, the court found absolute immunity inapplicable because liability was not grounded in the decision to prosecute, but was based on purely administrative actions.

Here, however, we find that the sole allegation in the complaint against Pappert is that he ordered O'Hara to prosecute Zenglen.  As the decision to prosecute is entitled to absolute immunity, we will dismiss this allegation against Pappert with prejudice because any

8

amendment would be futile.  <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004) ("We have

held that even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to

12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment

would be inequitable or futile.").  We dismiss without prejudice to Zenglen's ability to file an

amended complaint basing Pappert's liability on acts other than his order to O'Hara to

prosecute, insofar as these other acts are administrative.

       **B.**      **Statute of Limitations**

      The defendants next argue that the Magistrate erred when he denied the motion to

dismiss the retaliatory actions that took place more than two years prior to the initiation of the

complaint.  We agree.

      "While the language of FED.R.CIV.P. 8(c) indicates that a statute of limitations defense

cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made

where the complaint facially shows noncompliance with the limitations period and the

affirmative defense clearly appears on the face of the pleading."  <u>Oshiver v. Levin, Fishbein,

Sedran & Berman</u>, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994).  For § 1983 claims, the appropriate

statute of limitations is the state's statute of limitations for personal injury.  <u>Sameric v.

Philadelphia</u>, 142 F.3d 582, 599 (3d Cir. 1998).  Pennsylvania's personal injury statute of

limitations is two years.  <u>Id.</u>  As Zenglen filed the instant suit on August 31, 2004, events

occurring before August 31, 2002 are time barred.  From the face of the Complaint, many of

the allegedly retaliatory actions occurred before this date.  Zenglen, however, relies on the

continuing violations doctrine to support liability for otherwise time-barred incidents.  "[T]he

continuing violations doctrine is an 'equitable exception to the timely filing requirement."

Cowell v. Palmer Township, 263 F.3d 286, 292 (3d Cir. 2001) (applying the continuing

violations doctrine to a § 1983 claim).  The Magistrate relied on Cowell to hold that the

continuing violations theory applied to Zenglen's claims.

     We find it necessary to reevaluate Cowell in light of the Supreme Court's subsequent

decision in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002).  There, the

Court addressed the continuing violation doctrine in the context of Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000e.  Id. at 104.  The plaintiff claimed that "he had been subjected

to discrete discriminatory acts and retaliatory acts and had experienced a racially hostile work

environment throughout his employment."  Id.  Some of the allegedly discriminatory and

retaliatory events occurred before the timely filing period, but others occurred within the

timely period.  Id. at 106.  The defendants filed a motion to dismiss, arguing that the events

occurring before the timely filing period were barred by the statute of limitations.  Id.  The

Court explained:

> [D]iscrete discriminatory acts are not actionable if time barred, even when they
> are related to acts alleged in timely filed charges.  Each discrete discriminatory
> act starts a new clock for filing charges alleging that act.  The charge, therefore,
> must be filed within the [statutory] time period after the discrete discriminatory
> act occurred.

Id. at 113.

     The Court reasoned that "each incident of discrimination and each retaliatory adverse

employment decision constitutes a separate actionable 'unlawful employment practice.' [The

plaintiff] can only file a charge to cover discrete acts that 'occurred' within the appropriate

10

time period." Id. at 114.

We find that Morgan controls our analysis of Zenglen's § 1983 retaliation claim. See Hildebrandt v. Illinois Dept. of Natural Resources, 347 F.3d 1014, 1036 (7th Cir. 2004) (finding that the Morgan analysis applies to § 1983 claims);  Sharpe v. Cureton, 319 F.3d 259, 267-68 (6th Cir. 2003) (finding discrete retaliatory acts occurring before the appropriate time period barred and holding that they could not serve as the basis for liability for a First Amendment § 1983 retaliation claim even if they were sufficiently related to actions occurring within the appropriate time period); RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1061 (9th Cir. 2002) (applying Morgan to a § 1983 equal protection claim and holding that discrete actions occurring prior to the limitations may not serve as a basis for liability even if they are related to acts alleged in timely filed charges).

In Sharpe, the plaintiffs were firefighters who supported a losing candidate in a mayoral campaign.  319 F.3d at 262.  Shortly after the election, the winning candidate transferred the plaintiffs to less desirable locations within the fire department.  Id. at 262-63. Additionally, the plaintiffs were denied merit pay for the next two years, they were denied bonus pay, and the mayor "refused to consider a reasonable request to modify their pension plans." Id. at 263.  The plaintiffs filed suit under section 1983, alleging that the defendants committed these acts in retaliation for speech protected by the First Amendment.  Id.  The defendants argued that the transfers, which occurred before the statutory timely period, were barred even though the remaining retaliatory acts occurred within the time period.  Id.  at 265-66.  The plaintiffs relied on the continuing violation doctrine to argue that the transfers were

indeed actionable.  Id. at 267.  Applying Morgan, the court rejected the continuing violation

doctrine because the plaintiff's transfers were discrete acts "as they were made aware of the

retaliatory transfers on specific dates [before the timely period]."  Id. at 268.

Similarly, in Harry v. Philadelphia, No.CIV.A.03-661, 2004 WL 1387319, at *10-11

(E.D. Pa. 2004), the court applied the Morgan analysis to a § 1983 First Amendment claim.

The plaintiff claimed that the defendants retaliated against him by preventing him from taking

examinations necessary to obtain a promotion and by excluding him for the relevant promotion

eligibility lists.  Id. at *10.  The court found these actions equivalent to a retaliatory failure to

promote.  Id. at *11.  Thus, it concluded that the retaliatory actions were discrete retaliatory

incidents and, although related to claims within the statutory period, were time barred.  Id.

Zenglen alleges that the defendants individually deprived him of his First Amendment

rights and conspired to deprive him of his First Amendment rights.  He alleges he suffered four

adverse employment actions prior to August 31, 2002.  First, Evanko investigated him for two

years sometime between 1996 and 2000.[6]  (Compl. ¶ 22-23).  Next, the PSP investigated him

---

[6]  The defendants argue that an investigation is not an adverse action sufficient to support a First Amendment retaliation claim.  We disagree.  An allegedly retaliatory action is adverse if it "was sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights.'"  Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000).  We find that Plaintiff may be able to produce facts sufficient to allow a factfinder to conclude that the alleged investigations at question could have deterred a person of ordinary firmness from speaking out.  The defendants rely upon cases that do not state the law in this district.  We recognize that Benningfield v. City of Houston, 157 F.3d 369, 376 (5th Cir. 1998) holds that an investigation is not an adverse action.  However, it also limits adverse actions to "discharges, demotions, refusals to hire, refusals to promote, and reprimands."  Id. (quoting Pierce v. Texas Department of Crim. Justice, Inst. Div., 37 F.3d 1146, 1149 (5th Cir. 1994)).  This limited view of adverse actions conflicts with the broad fact-intensive inquiry explained in Suppan.  Thus, not only is Benningfield non-binding on this Court, but it conflicts with binding precedent.  Defendants' reliance on Kidd v. Pennsylvania, No.CIV.A. 97-5577, 1999 WL 391496 at *7 (E.D. Pa. May 20, 1999) is similarly misplaced.  There, the court

again in the summer of 2000 and placed a number of restrictions on him on June 13, 2000.

(Compl. ¶ 34-35).  In early 2001, the PSP "higher-ups" reinvestigated a claim.  (Compl. ¶ 25-27).  On May 9, 2001, Zenglen was suspended for speaking with a peer counselor.  (Compl. ¶ 36).  O'Hara initiated a prosecution in compliance with Pappert's orders sometime either in or before August 2002.[7]  (Compl. ¶ 41-42).

Plaintiff suffered two additional adverse employment actions, although it is either unclear from the face of the complaint when they happened or they clearly occurred within the limitations period.  Jeffrey Miller investigated Zenglen sometime after November 2001. (Compl. ¶ 34-35).  On February 9, 2004, Transue, Titler, and Miller increased Zenglen's employment restrictions.  (Compl.  ¶ 41).

Thus, the Complaint lists a series of discrete adverse employment actions, committed by various different defendants, under the supervision of different defendants, and each potentially giving rise to its own cause of action.  Plaintiff was aware of the restrictions and the suspension when they were implemented.  Furthermore, he was aware that the investigations were retaliatory in the summer of 2000, long before the appropriate time period.

---

granted summary judgment on a Title VII claim because it found that an employer's investigation into whether an employee secretly taped phone conversations was not an adverse action.  The instant motion is pursuant to Federal Rule of Civil Procedure 12(b)(6), not Rule 56, and thus we apply a different standard than Kidd.  Furthermore, Kidd contains no indication that the investigation was as severe as the alleged investigations in the present case.  Therefore, we find that the alleged investigations are sufficient to state a claim for retaliation because Zenglen may produce facts to demonstrate they were sufficiently severe to deter a person of ordinary firmness from exercising his First Amendment  rights.

[7] We engage in no analysis of whether Zenglen's claim against Pappert based on this action is barred by the statute of limitations, as we have already dismissed it based on Pappert's prosecutorial immunity.

13

Plaintiff connects each of these discrete actions with a conspiracy allegation. For the purposes of a civil conspiracy claim, overt actions occurring prior to the timely period are barred by the statute of limitations. In a civil conspiracy claim, each overt act causing damage is the basis for liability, and a conspiracy with no damaging overt act is not actionable. <u>See</u> <u>Beck v. Prupis</u>, 529 U.S. 494, 501-03 (2000). The statue of limitations "period runs from each overt act causing damage . . . . For each act causing injury, a claimant must seek redress within the prescribed limitations period. . . . In the civil case, actual injury is the focal point, not the illegal agreement per se. " <u>Wells v. Rockefeller</u>, 728 F.2d 209, 217 (3d Cir. 1984); <u>see also</u> <u>Ammlung v. City of Chester</u>, 494 F.2d 811, 814-15 (3d Cir. 1974) (noting that the statute of limitations for civil rights conspiracy claims pursuant to § 1983 runs from each overt action).

Therefore, we hold that the discrete retaliatory actions occurring prior to August 31, 2002 are barred by the statute of limitations and Zenglen may not recover damages caused by these acts. Accordingly, we will dismiss without prejudice the portion of Zenglen's retaliation claim based on these actions.[8]

## C.      Causation

Defendants argue that the Complaint does not state a retaliation claim because the lapse of time between the protected speech and the retaliatory action is too great to support the causation element. We find that despite the wide time range, Zenglen could potentially offer some facts to prove causation. <u>See</u> <u>Brennan v. Norton</u>, 350 F.3d 399, 420 (3d Cir. 2003)

---

[8] We dismiss without prejudice pursuant to <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004).

(finding that a significant delay between the protected speech and the retaliation does not

prevent a plaintiff from establishing the required nexus where there is "evidence of continuing

hostility to connect events that would not otherwise appear to be related to each other") (citing

Abramson v. William Paterson College, 260 F.3d 265, 288 (3d Cir. 2001)).

For example, one of the defendants may admit that their actions were in retaliation for his

protected speech.  Furthermore, even though time-barred retaliatory actions cannot serve as a

basis for liability, they are relevant to establish that timely incidents were retaliatory.  Morgan,

536 U.S. at 113.  Accordingly, we find that the delay between the protected speech and the

timely retaliatory incidents does not preclude Zenglen from producing other facts sufficient to

support the causation element of his claim.  Therefore, we will deny the motion to dismiss

Zenglen's retaliation claim.

## IV.    Conclusion

We hold that Defendant Pappert is entitled to prosecutorial immunity for claims for

damages based on his order to O'Hara to prosecute Zenglen.  This portion of the Complaint is

dismissed with prejudice because amendment would be futile.  We dismiss without prejudice

to Plaintiff's ability to file an amended complaint basing Pappert's liability on some other

action. We dismiss without prejudice the portion of the complaint seeking to base liability on

retaliatory adverse employment actions occurring before August 31, 2002.  We deny the

motion to fully dismiss the retaliation claim.

For those claims we dismiss without prejudice, Zenglen may proceed as described in

the attached order.  An appropriate order follows.

15

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LANCE A. ZEGLEN,** | : | **No. 3:04cv1940** |
| **Plaintiff,** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **GERALD PAPPERT, PAUL** | : | |
| **EVANKO, JEFFREY MILLER,** | : | |
| **CYNTHIA TRANSUE, JOHN DUBY,** | : | |
| **FARZAD SHARIF, BARRY TITLER,** | : | |
| **CHRISTOPHER CARUSONE,** | : | |
| **CHRISTOPHER SAITES, Dr. RICK** | : | |
| **BROWN, MICHAEL PATRICK,** | : | |
| **GARRETT RAIN, and BROOKE** | : | |
| **QUICK,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, to wit, this 22nd day of September 2005, Defendants' objections to Magistrate Mannion's Report and Recommendation (Doc. 18) are **SUSTAINED** in part and **OVERRULED** in part. It is hereby **ORDERED** that:

1) The portion of the complaint seeking damages for Defendant Gerald Pappert's order to a subordinate to prosecute Plaintiff is **DISMISSED** with prejudice.

2) The portion of the complaint seeking damages for Defendants' retaliatory actions occurring before August 31, 2002 are **DISMISSED** without prejudice.

3) Defendants' motion to dismiss Plaintiff's retaliation claim because he cannot establish causation is **DENIED**.

4) For those claims dismissed without prejudice, Plaintiff may file an amended complaint within fifteen days of the issue of this Order.  If Plaintiff does not desire to amend, he may file a notice of his intention and we will order these claims dismissed with prejudice.  Should Plaintiff fail to file a notice or an amended complaint within fifteen days, these claims will be dismissed with prejudice and the action will proceed with the Complaint as filed.

5) This case is remanded to the Magistrate to conduct further proceedings consistent with this opinion.

BY THE COURT:


s/ James M. Munley_____
**JUDGE JAMES M. MUNLEY**
**United States District Court**

17