**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LANCE A. ZEGLEN,** | : | |
| Plaintiff, | : | CIVIL ACTION NO. 04-1940 |
| v. | : | (MUNLEY, D.J.) |
| | | (MANNION, M.J.) |
| **JEFFREY MILLER, CYNTHIA TRANSUE, JOHN DUBY, FARZAD SHARIF, BARRY TITLER, NICHOLAS SAITES, RICK BROWN, MICHAEL PATRICK, GARRETT RAIN, CHRISTOPHER CARUSONE, and BROOKE QUICK,** | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

Pending before the court is a motion for summary judgment filed by the plaintiff / counterclaim defendant, Lance Zeglen (hereinafter "plaintiff"), against defendant/counterclaim plaintiff, Brooke Quick (hereinafter "defendant"). (Doc. No. 45). Upon consideration, the plaintiff's motion should be granted in part and denied in part.

**I.   Procedural History**

The plaintiff, Lance A. Zeglen, a Pennsylvania State Police ("PSP") Trooper, commenced this civil rights action by filing a complaint against the defendants on August 31, 2004.[1]   (Doc. No. 1).   Count I of the original

---

[1] Eleven of the defendants are current or former employees of the PSP. The twelfth defendant, Brooke Quick, is a private citizen who participated as a witness in a PSP investigation into the plaintiff's activities.

complaint advances that defendants Evanko,[2] Miller, Transue, Brown, and Carusone conspired to harass and intimidate the plaintiff in retaliation for his right to publicly express his opinions in violation of the First Amendment. This allegation arises out of events beginning in 1996, where the plaintiff purportedly openly opposed a PSP policy that would disband Interstate Troop S, which the plaintiff asserts was a matter of public concern. Count II advances a malicious prosecution claim against every defendant. Here, the plaintiff alleges that the defendants participated in efforts to falsely investigate and bring unsupportable charges against him in retaliation for speaking out about Troop S. In Count III, the plaintiff brings pendent state law defamation and "false light misrepresentation" claims against defendant Brooke Quick pursuant to this court's supplemental jurisdiction, 28 U.S.C. § 1367 (a).[3] The plaintiff seeks declaratory judgment in his favor, monetary damages, and attorney's fees and costs.

On June 14, 2006, defendant Quick filed an answer and counterclaimed against the plaintiff, as well as cross-claimed against various PSP

---

[2] Paul J. Evanko was formerly terminated as a defendant on November 20, 2007.

[3] Only the procedural history pertaining to defendant Quick is outlined herein. Procedural history relevant to the eleven PSP defendants is found in a separate Report and Recommendation, also filed this day, regarding the PSP defendants' motion for summary judgment against the plaintiff. (Doc. No. 53).

defendants.[4] (Doc. No. 30). She advances the same six counts against the counterclaim and cross-claim defendants. Counts I, II, and III pertain to violations of her civil and constitutional rights under 42 U.S.C. §§ 1983. The remaining counts raise common law torts: count IV alleges assault and battery; count V alleges intentional and/or negligent infliction of emotional distress; and count VI alleges false imprisonment. Defendant Quick demands monetary damages in excess of $100,000.00, punitive damages, attorney's fees, costs, and interest.

On May 7, 2007, the plaintiff filed the instant motion for summary judgment, (Doc. No. 45), together with a brief in support, (Doc. No. 46), and a statement of material facts, (Doc. No. 47). In his supporting brief, the plaintiff moves for summary judgment on all six claims raised in the defendant's counterclaim. (Doc. No. 45). The plaintiff also argues that the

---

[4] In her cross-claim, Brooke Quick names seven defendants; two are parties in the original action – Paul Evanko and Jeffrey Miller, but the remaining five defendants are not named in the original complaint and are therefore considered to be third parties. Federal Rule of Civil Procedure 14 requires that for a defendant to become a third-party plaintiff, he or she must cause a summons and complaint to be served upon those persons not a party to the action. The third-party plaintiff need not obtain leave to make service as long as he or she files the third-party complaint within ten days of serving the original answer. Id. Here, there is no indication in the record that defendant Quick ever served the five third-party defendants with a summons and third-party complaint. Nor is there any indication that service was effected within 120 days after filing. See Fed. R. Civ. P. 4(m). Because service was not made upon the third-party defendants within 120 days, the court should dismiss the action as to the five defendants not named in the original complaint. See id.

3

defendant should be denied her request for punitive damages. Id. On August 31, 2007, the defendant filed an answer and counterstatement of material facts, (Doc. No. 74), as well as a brief in opposition, (Doc. No. 75). However, in her opposition brief, the defendant only opposes the granting of summary judgment as to the three common law tort counterclaims IV, V, and VI. (Doc. No. 75 pp. 4-8).[5] The plaintiff did not file a reply. This matter is now ripe for disposition as to the counterclaims of assault and battery, infliction of emotional distress, false imprisonment, and the issue of punitive damages.[6]

---

[5] Due to the absence of any argument in opposition as to counterclaims I, II, and III, the defendant shall be deemed not to oppose the plaintiff's motion for summary judgment as to those counterclaims. See Middle District of Pennsylvania Local Rule 7.6. Consequently, summary judgment should be granted in favor of the plaintiff as to counterclaims I, II, and III. Only the common law tort counterclaims IV, V, and VI and the issue of punitive damages will be considered in this Report and Recommendation.

[6] On August 31, 2007, defendant Brooke Quick also filed a cross-motion for summary judgment against the plaintiff, Lance Zeglen. (Doc. No. 73). However, a supporting brief and a statement of material facts were never filed with the court. Middle District of Pennsylvania Local Rule 7.5 requires that any party who files a motion shall be required to file a brief in support of that motion within ten days of the filing of that motion. In the event such a moving party does not file a brief in support within the ten-day time frame, Rule 7.5 provides that such a party shall be deemed to have withdrawn the motion. Local Rule 56.1 also requires that the moving party file a statement of material facts. Although the defendant references a supporting brief and statement of material facts in her motion, neither were filed with the court as required by the local rules. Consequently, the defendant's cross-motion for summary judgment should be deemed withdrawn. It should also be noted that on August 15, 2007, this court granted the defendant an enlargement of time in which to file dispositive motions. (Doc. No. 71). That deadline—August 31, 2007—has long since passed.

## II.     Summary Judgment Standard

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990).  A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Casualty & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995).  At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249 ; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations).  Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24.  The moving party can discharge the burden by showing that "on all the essential elements

of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986)); see also Celotex Corp., 477 U.S. at 325 (stating that the non-moving party cannot simply reassert factually unsupported allegations contained in its pleadings in opposing summary judgment). However, if the non-moving party fails to make a sufficient showing that a genuine issue of material fact exists, Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

### III.    Undisputed Facts

From the pleadings and exhibits submitted herewith, the following material facts can be ascertained as undisputed. The plaintiff, Lance Zeglen, began working for the PSP in 1985. (Doc. No. 74 ¶ 1). In the summer of 1999, the plaintiff frequented Gresham's Landing Restaurant and Ice Cream Shop. Id. ¶ 10. During that summer, the plaintiff met the defendant, Brooke Quick, who worked at Gresham's Landing. Id. ¶¶ 5, 8. The defendant was

almost fifteen years old and the plaintiff was turning forty-three at that time. Id. ¶¶ 5-6; (Doc. No. 56 Ex. 2 p. 2). The plaintiff gave his telephone number to the defendant and told her to call him if she ever needed anything. (Doc. No. 74 ¶ 12). The defendant indeed called the plaintiff on various occasions. Id. ¶ 13.

The following summer, the defendant kissed the plaintiff outside of Greshan's Landing. Id. ¶ 15. The defendant initiated the kiss, but it was not a passionate kiss. Id. ¶ 16. Then the plaintiff and the defendant became intimate on various occasions. The first sexual encounter took place one week after the defendant's sixteenth birthday, on the plaintiff's boat at Lake Wallenpaupack.[7] Id. ¶ 18. The next encounter occurred a week later, also on the plaintiff's boat, where the plaintiff touched the defendant's breasts, inserted his finger in her vagina, and performed oral sex on her.[8] Id. ¶ 19, 123; (Doc. No. 47-2 Ex. 2 p. 30). In February 2001, the plaintiff twice picked the defendant up from a basketball game and brought her to his house where they engaged in mutual oral sex as well as sexual intercourse. (Doc. No. 74 ¶¶ 20-21). In the spring of 2001, the defendant showed up unannounced at

---

[7] It is disputed, however, whether the defendant consented to this incident of sexual activity. The defendant asserts that she attempted to push the plaintiff away, yet he still inserted his finger into her vagina. Id. ¶¶ 18, 23; (Doc. No. 47-2 Ex. 2 p. 27). The plaintiff maintains that everything was consensual and that only kissing and fondling occurred. (Doc. No. 47 ¶¶ 18, 23).

[8] The two sexual encounters on the boat serve as the basis for the defendant's false imprisonment claim discussed infra. Yet the defendant does not allege that this second encounter was nonconsensual.

7

the plaintiff's house and a brief sexual encounter occurred between them. Id. ¶ 22. And on one occasion, the defendant took pictures of her breasts and emailed them to the plaintiff. Id. ¶ 36. At all times relevant, the plaintiff never threatened, arrested, handcuffed, beat up, held down, raped, refused to let go of, or imprisoned the defendant in any way. Id. ¶¶ 27-32.

The defendant wanted some of this sexual activity to occur.[9] (Doc. No. 74 ¶ 24). She was, during the course of their sexual relationship, in love with the plaintiff, and she told him she loved him and that she wanted to marry him. Id. ¶¶ 33-35. However, the plaintiff never told her that he loved her; he was actually in a relationship with another woman. Id. ¶¶ 37-38. This incited jealousy on the part of the defendant, who later felt that the plaintiff had misled her or used her. Id. ¶¶ 38-39.

Sometime in the spring of 2001, the defendant spoke to her school guidance counselor about her sexual relationship with the plaintiff. Id. ¶ 40. The counselor was later interviewed by Corporal John Duby of the PSP, who was conducting an investigation into allegations that the plaintiff had inappropriate contact with one or more female minors. Id. ¶ 41; (Doc. No. 54-2 Ex. 4). Corporal Duby and Corporal Sharif interviewed the defendant. Id. ¶ 50. The defendant's stepfather and friends were also interviewed. Id. ¶ 52-

---

[9] The defendant sates, "It is admitted that Brooke Quick wanted some of the sexual activity to occur when she was 16 years old. It is specifically denied that she was initially receptive or desirous of Lance Zeglen's sexual advances or actions." (Doc. No. 74 ¶ 24).

8

53.[10] The plaintiff was ultimately charged with and acquitted of one count of corruption of minors. The defendant provided testimony at both the preliminary hearing and the trial. Id. ¶¶ 81, 89. She also testified at an arbitration hearing over the PSP's decision to dismiss the plaintiff from the PSP.[11] (Doc. No. 54-4 Ex. 24 pp. 8-9). As a result of the above, the defendant has exhibited symptoms of Post-Traumatic Stress Disorder. (Doc. No. 74 ¶ 126; Doc. No. 75-2).

IV.   Discussion

A.    Assault and Battery

The defendant's "assault and battery" counterclaim count IV comprises two separate tort theories. To prove assault, she must show that the plaintiff intended to cause an imminent apprehension of a harmful or offensive bodily contact. Lakits v. York, 258 F. Supp. 2d 401, 407 (E.D. Pa. 2003); Cucinotti v. Ortmann, 159 A.2d 216, 217 (Pa. 1960). To prove battery, she must establish that the plaintiff intended to cause a harmful or offensive bodily contact or an imminent apprehension of such contact, and that such contact directly or indirectly occurred. Schall v. Vazquez, 322 F. Supp. 2d 594, 601 (E.D. Pa. 2004); Herr v. Booten, 580 A.2d 1115, 1117 (Pa. Super. Ct. 1990).

---

[10]   With the defendant's cooperation, the PSP placed a wire intercept on a phone conversation she had with the plaintiff on two occasions. (Doc. No. 54-3 Exs. 12, 13).

[11]   The plaintiff's dismissal from the PSP was upheld. (Doc. No. 74 ¶ 110); (Doc. No. 54-4 Ex. 24).

According to the Restatement (Second) of Torts § 19, "[A] bodily contact is offensive if it offends a reasonable sense of personal dignity." Schall, 322 F. Supp. 2d at 601 (internal citations omitted).  There is no need to show actual physical injury; rather, unpermitted touching itself gives rise to a civil battery action.  Atamian v. Assadzadeh, 2002 U.S. Dist. LEXIS 6269, at *3-4 (E.D. Pa. Apr. 9, 2002) (citing Montgomery v. Bazaz-Sehgal, 742 A.2d 1125, 1131 (Pa. Super. Ct. 1999).  However, consent to being touched is an absolute defense.[12]  Id.; see also Restatement (Second) of Torts § 892A ("One who effectively consents to conduct of another intended to invade his interests cannot recover in an action of tort for the conduct or for harm resulting from it.").

Consent may be express or implied.  Words, acts, and even inaction can manifest implied consent, so long as such conduct would be understood by a reasonable person as intended to indicate consent.  Schall, 322 F. Supp. 2d at 602; Dicenzo v. Berg, 16 A.2d 15, 17 n.4 (Pa. 1940).  Section 892 of the Restatement (Second) of Torts provides an example: "A, a young man, is alone with B, a girl, in the moonlight.  A proposes to kiss B.  Although inwardly objecting, B says nothing and neither resists nor protests by any word or gesture.  A kisses B.  A is not liable to B."  Cmt. c, illus. 3.  Consent is terminated once the actor knows or has reason to know that the other is

---

[12] It should be noted that in Pennsylvania, the age of consent is sixteen.  Statutory sexual assault occurs when a "person engages in sexual intercourse with a complainant under the age of 16 years and that person is four or more years older than the complainant and the complainant and the person are not married to each other."  18 Pa. Cons. Stat. Ann. § 3122.1 (1995).

10

unwilling to continue with the present conduct. Id. § 892A cmt. I. Yet "active opposition is not a prerequisite to finding lack of consent." Commonwealth v. Rhodes, 481 A.2d 610, 614 n.5 (Pa. Super. Ct. 1984) (internal citations omitted).

In this case, the plaintiff argues that "all incidents of sexual contact alleged to have happened by the defendant Quick were mutual." (Doc. No. 46 p. 23). Moreover, because the defendant pursued him and wanted these acts to occur, she is unable to establish that she considered the acts to be harmful or offensive or that they caused any apprehension on her part. Id. In response, the defendant points to her testimony that the plaintiff committed a highly offensive act when he took her into the cabin of his boat and inserted his finger into her vagina, despite her attempts to push him away. (Doc. No. 75 pp. 5-6). She asserts, "[t]he act of a [sic] inserting his finger into the vagina of a 16 year old girl and subsequently having sexual intercourse with her on numerous occasions is harmful and offensive." Id. p. 6.

Sexual intercourse and other intimate acts between a sixteen-year-old girl and a forty-four-year-old male state trooper can certainly offend a reasonable sense of personal dignity. If "harmful or offensive bodily contact" were the only element to be proven for assault or battery, then a reasonable jury could find enough evidence to support these claims. Yet summary judgment must also turn on the issue of consent.

On their first boat trip, the defendant claims that she resisted the plaintiff's advances. According to the defendant, she "... resisted Lance

Zeglen by pushing him away the first time he took her out in his boat on Lake Wallenpaupack when she was 16 years old. Despite her resistance, he inserted his finger into her vagina." (Doc. No. 74 ¶ 23; see also Doc. No. 47-2 Ex. 2 p. 27). Yet in arguing that such contact was mutual, the plaintiff cites to the same page in the defendant's deposition, (Doc. No. 47-2 Ex. 2 p.27), as well as other testimony that the defendant initially resisted the plaintiff's advances, Id. pp. 37-38. Clearly, whether the defendant consented to the initial contact on the first boat trip is in dispute. Summary judgment should be denied on the counterclaim of assault and battery as to the occurrence on the first boat trip on Lake Wallenpaupack.

With respect to the subsequent sexual occurrences between the parties, under the totality of the circumstances, the defendant has failed to raise a genuine issue of material fact that the plaintiff committed assault and battery upon her without her consent. See Lignore v. Hosp. Univ. of Pa., 2006 U.S. Dist. LEXIS 43996, at *26-29 (E.D. Pa. June 28, 2006) (applying a totality of the circumstances analysis to allegations of hostile work environment sexual harassment); Commonwealth v. Mlinarich, 542 A.2d 1335, (Pa. 1988) 1335, 1348-49 (applying a totality of the circumstances analysis to determine whether an accused engaged in sexual intercourse by forcible compulsion). Not only did the defendant initiate their first kiss, but she also chose to accompany the plaintiff on a second boat trip even though she allegedly resisted the sexual activity that took place a week earlier. According to the defendant, during that second boat trip, the plaintiff touched the defendant's

breasts, inserted his finger in her vagina, and performed oral sex on her. (Doc. No. 74 ¶ 19, 123; Doc. No. 47-2 Ex. 2 p. 30). Surely if the defendant did not want further sexual contact to occur, she would not have joined the plaintiff on his boat once again. Nowhere in the record does the defendant claim that she did not consent to such potentially offensive touching on this second occasion. In fact, she even admits that when she was sixteen, she wanted this sexual activity to occur. (Doc. No. 74 ¶ 24). This averment, coupled with evidence that the plaintiff and defendant later engaged in mutual oral sex and sexual intercourse, serve to negate any indication that the defendant was placed in apprehension of such touching or did not consent to such touching by the plaintiff, at least after the first boat encounter. The defendant's pattern of conduct and body language—certainly, the act of emailing photographs of her naked breasts to the plaintiff—clearly manifest implied consent. See (Doc. No. 74 ¶ 36). Summary judgment should therefore be granted in favor of the plaintiff on the counterclaim of assault and battery as to those incidents occurring subsequent to the first boat trip.[13]

**B.   Intentional and Negligent Infliction of Emotional Distress**

Again, the defendant's "infliction of emotional distress" counterclaim

---

[13] Although the plaintiff's actions could correctly be referred to as reprehensible, this court is bound to uphold Pennsylvania law. Because the defendant was sixteen-years-old at the time she became intimately involved with the plaintiff, she was legally able to consent to such contact with a man twenty-eight years her senior. See 18 Pa. Cons. Stat. Ann. § 3122.1 (1995) (statutory sexual assault); Teti v. Huron Ins. Co., (914 F. Supp. 1132 (E.D. Pa. 1996) (holding that a sixteen-year-old student was legally capable of consenting to sexual intercourse with an adult teacher).

count V comprises two separate torts: intentional and negligent infliction of emotional distress. While the Pennsylvania Supreme Court has not expressly adopted the tort of intentional infliction of emotional distress as the law in Pennsylvania, it has cited Restatement (Second) of Torts § 46 as "setting forth the minimum elements necessary to sustain such a cause of action." Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000); see also Hoy v. Angelone, 720 A.2d 745, 753-54 (Pa. 1998) (also quoting parts of § 46). Courts in this circuit have therefore recognized the tort as a viable cause of action. See, e.g., Silver v. Mendel, 894 F.2d 598, 606 (3d Cir. 1990) (predicting that "Pennsylvania's highest court will ultimately embrace" the tort of intentional infliction of emotional distress); Doe v. Liberatore, 478 F. Supp. 2d 742 (M.D. Pa. 2007); Chancellor v. Pottsgrove Sch. Dist., 501 F. Supp. 2d 695 (E.D. Pa. 2007); Hines v. Proper, 442 F. Supp. 2d 216 (M.D. Pa. 2006).

The following four elements must be established to prove a claim of intentional infliction of emotional distress: "(1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; [and] (4) that distress must be severe." Liberatore, 478 F. Supp. 2d at 765 (quoting Hoy v. Angelone, 691 A.2d 476, 482 (Pa. Super. Ct. 1997)). This court has explained

> Extreme and outrageous conduct is conduct which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Generally, "the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'outrageous'!" Id. In addition, to prevail on an intentional infliction of emotional distress cause

> of action, a plaintiff must provide competent medical evidence to prove the existence of emotional distress.

Id. (internal citations omitted).

Here, there is a genuine issue of fact as to whether the plaintiff caused intentional infliction of emotional distress upon the defendant.  All four elements of the claim are in dispute.  As stated above, the significant age difference between the two parties makes their sexual relations reasonably offensive; a reasonably jury might therefore find that the plaintiff's actions were extreme and outrageous.  Even though the defendant consented to some of this offensive conduct, the plaintiff's behavior could be considered reckless due to the defendant's relative vulnerability and perception of a man who is not only twenty-eight years older, but also a Pennsylvania State Trooper.  "[P]olice officers are held to a higher standard of conduct than ordinary citizens and are expected to conduct themselves lawfully and properly."  York Twp. Bd. of Comm'rs v. Batty,694 A.2d 395, 397 (Pa. Commw. Ct. 1997) (quoting Phila. Civil Serv. Comm'n v. Ross, 595 A.2d 200, 201-02 (Pa. Commw. Ct. 1989).  As a member of the PSP, therefore, the plaintiff's failure to restrain himself from having sex with a sixteen-year-old girl might be viewed as extreme and outrageous.  Moreover, the defendant experienced actual physical injury as a result; the fact that the defendant was exhibiting symptoms of Post-Traumatic Stress Disorder would satisfy the third and fourth elements of her claim.  Summary judgment should therefore be denied as to intentional infliction of emotional distress.

Pennsylvania law governing the tort of negligent infliction of emotional

15

distress is different.  First, a plaintiff must establish the traditional elements of a negligence claim.[14]  Hopkins v. Hamilton Bell Corp., 2007 U.S. Dist. LEXIS 42248, at *7 (E.D. Pa. May 30, 2007).  Second, the plaintiff must establish at least one of the following elements: "(1) that defendant had a contractual or fiduciary duty toward [him or her]; (2) that plaintiff suffered a physical impact; (3) that plaintiff was in a "zone of danger" and at risk of an immediate physical injury; or (4) that plaintiff had a contemporaneous perception of tortuous injury to a close relative."  Id. (internal citations omitted); see also Gentile v. Travelers Personal Ins. Co., 2007 U.S. Dist. LEXIS 11812, at *8-9 (M.D. Pa. Feb. 21, 2007).  Here the plaintiff, as a private citizen, did not owe a duty of care to the defendant.  While "[t]he sole purpose of the State Police is to protect the safety and well being of the citizens of the Commonwealth," EEOC v. Commonwealth, 645 F. Supp. 1545, 1552 (M.D. Pa. 1986), the defendant has not alleged that the plaintiff's actions were carried out within the scope of his employment as a PSP Trooper.  Because the defendant does not claim that the plaintiff owed her a legal duty, there can be no act of negligence or, consequently, any finding of negligent infliction of emotional distress.  Summary judgment as to negligent infliction of emotional distress should therefore be granted.

---

[14] To prove negligence under Pennsylvania law, a plaintiff must show the existence of a legal duty, a breach of that duty, causation, and damages. See Price v. Brown, 680 A.2d 1149, 1154 (Pa. 1996).

16

**C.     False Imprisonment**

Under Pennsylvania law, there are two elements to a claim of false imprisonment: (1) the detention of another person; where (2) such detention is unlawful. Sershen v. Cholish, 2007 U.S. Dist. LEXIS 79627, at *28 (M.D. Pa. Oct. 26, 2007); Reedy v. Twp. of Cranberry, 2007 U.S. Dist. LEXIS 58221, at *8 (W.D. Pa. Aug. 9, 2007). No false imprisonment occurs if a known, safe means of escape exists, even if slightly inconvenient to the plaintiff. Joyner v. Sch. Dist. of Phila., 313 F. Supp. 2d 495, 502 (E.D. Pa. 2004) (citing Caswell v. BJ's Wholesale Co., 5 F. Supp. 2d 312, 319 (E.D. Pa. 1998). If the plaintiff is not completely confined by physical force or barriers, then verbal threats must be used to effect confinement. Id. Moreover, "that a plaintiff merely believes she is not free to leave is not enough to support a claim for false imprisonment. A plaintiff must . . . 'attempt to determine whether [her] belief that [her] freedom of movement has been curtailed has basis.' This can be done, for instance, by making a failed request to leave." Caswell, 5 F. Supp. 2d at 319 (quoting Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 541 (E.D. Pa. 1982)).

Here, there is no evidence that the defendant was ever unlawfully confined on the plaintiff's boat. The defendant has made no allegations of threats or force that the plaintiff used to keep her on the boat; to the contrary, she admits that the plaintiff never threatened, arrested, handcuffed, beat up, held down, raped, refused to let go of, or imprisoned her in any way. (Doc. Nos. 47, 74 ¶¶ 27-32) (emphasis added). The fact that the defendant claims

17

that the plaintiff took her into the cabin of the boat where no one could see them is not enough to support unlawful confinement. Caswell v. BJ's Wholesale Co., 5 F. Supp. 2d 312, 319 (E.D. Pa. 1998); (Doc. No. 47-2 Ex. 2 p. 29; Doc. No. 74 ¶ 122). The record is absent of any evidence that shows she attempted to leave or escape, but was forced to stay against her will. Moreover, the defendant's willingness to enter the plaintiff's boat and descend into the cabin below a second time, knowing full well that sexual activities would probably take place, undermines any claim that she was unlawfully detained. Consequently, summary judgment should be granted in favor of the plaintiff as to counterclaim VI.

**D.    Punitive Damages**

It is settled law in Pennsylvania that punitive damages may be awarded "when a person's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton, or reckless conduct." SHV Coal , Inc. v. Cont'l Grain Co., 587 A.2d 702, 704 (Pa. 1991). Such misconduct cannot be a result of "ordinary negligence such as inadvertence, mistake and errors of judgment," but rather an act "of an unreasonable character, in disregard to a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make highly probable that harm would follow." Esteras v. TRW, Inc., 2006 U.S. Dist. LEXIS 60437, at *13 (M.D. Pa. Aug. 25, 2006) (quoting Came v. Micou, 2005 U.S. Dist. LEXIS 40037, at *8-9 (M.D. Pa. June 23, 2005)). Courts award punitive damages to punish the tortfeasor for such conduct and to deter him or others like him from similar conduct. Id.; In re TMI

Metro. Edison Co., 67 F.3d 1119, 1124 (3d Cir. 1995 (citing Kirkbride v. Lisbon Contractors, Inc., 555 A.2d 800, 803 (Pa. 1989)).

As stated above, a reasonable jury could find that the plaintiff committed the torts of assault, battery, and intentional infliction of emotional distress. If a jury finds that he intentionally or recklessly acted in an extreme and outrageous manner toward the defendant, that same jury should be allowed, depending upon the evidence adduced at trial, to consider awarding punitive damages in this case. See Williams v. Guzzardi, 875 F.2d 46 (3d Cir. 1989) (affirming an award of punitive damages for intentional infliction of emotional distress, even though the state of Pennsylvania does not recognize the tort).

## V.   Conclusion

Based on the foregoing, it is **HEREBY RECOMMENDED THAT** the plaintiff's motion for summary judgment, **(Doc. No. 45)**, be:

1) **GRANTED** as to Counts I II, III, and VI of the defendant's counterclaim.

2). **GRANTED IN PART AND DENIED IN PART** as to Count IV.

3) **DENIED** as to Count V; and,

4) **DENIED** as to the plaintiff's motion to dismiss the punitive damage claim for relief, with respect to Counts IV and V.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

Date: November 30, 2007
O:\shared\REPORTS\2004 Reports\04-1940.03.wpd